IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EMILY HUNT, et al., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil Action |
| | : | No. 09-4921 (JBS-AMD) |
| v. | : | |
| | : | |
| GLOBAL INCENTIVE & MEETING | : | **OPINION** |
| MANAGEMENT, SA DE CV, et al., | : | |
| Defendants. | : | |

APPEARANCES:

Alan H. Schorr, Esq.
ALAN H. SCHORR & ASSOCIATES, PC
5 Split Rock Drive
Cherry Hill, NJ 08003
     -and-
Gregory Gober, Esq.
Wesley M. Hightower, Esq.
BLAINES & HIGHTOWER, LLP
777 Main Street, Suite 1900
Fort Worth, Texas 76102
     Counsel for Plaintiffs Emily Hunt, Shea Hunt, Mary Cowen,
     Adam C. Fuqua, Jerry Wayne Hunt, and John Michael Cowen

Joshua Lind Grimes, Esq.
GRIMES LAW OFFICES LLC
2005 Market Street
Suite 1120
Philadelphia, PA 19103
     Counsel for Defendant Global Incentive & Meeting Management,
     SA DE CV

**SIMANDLE**, District Judge:

The present action arises out of the tragic deaths of Jean
and Billy Hunt in Cancun, Mexico on October 1, 2007. Plaintiffs,
relatives and beneficiaries of the deceased and all residents of
Texas, brought suit against Defendant Global Incentive & Meeting

Management, SA DE CV, ("GIM"), a Mexican corporation, and GIM's president, Armando R. Ortiz, a United States citizen domiciled in Mexico. Plaintiffs subsequently dismissed Defendant Ortiz from the action.[1] Plaintiffs allege that Defendant's negligence caused the driving accident that killed the Hunts, who were also residents of Texas. Defendant has moved to dismiss pursuant to Rule 12(b)(2), Fed. R. Civ. P., for lack of personal jurisdiction, and Rule 12(b)(3), Fed. R. Civ. P., for improper venue and on the grounds of forum non conveniens. [Docket Item 14.] Upon consideration of these issues, the Court, acknowledging the tragic circumstances surrounding this litigation, finds that it does not have personal jurisdiction over Defendant GIM. However, the Court additionally finds that Plaintiffs have made a prima facie showing that the United States District Court for the Northern District of Texas could exercise personal jurisdiction over Defendant GIM under an "alter ego" theory. The Court will, consequently, transfer the action to the U.S. District Court for the Northern District of Texas.

---

[1] The complaint also names Beacon Hospitality Management, LLC, Beacon Investment, LLC, Global Meetings & Incentives, Inc., and Global Meetings & Incentive Alliance, LLC, as defendants. On September 15, 2010, Plaintiffs voluntarily dismissed the action against Defendant Ortiz and Global Meetings & Incentive Alliance, LLC under Fed. R. Civ. P. 41(a)(1)(A) [Docket Item 42.] For the purposes of the present motion, the Court is only concerned with Global Incentive & Meeting Management, SA DE CV, as the only moving party still party to the case, and will use the term "Defendant" or "GIM" to refer only to this moving defendant.

# I.   BACKGROUND

This case begins in July, 2007, when Billy and Jean Hunt purchased an all-inclusive vacation package to a resort in Playa del Carmen, Mexico, through CheapCaribbean.com.  (Compl. ¶ 3.1.) Included in the package was transport to and from the airport, to be provided by an entity called "Global Incentive Management." (Id.)  On October 1, 2007, the Hunts departed from Dallas/Fort Worth International Airport and arrived in Cancun International Airport, where a CheapCaribbean.com representative took their ground transfer vouchers and directed the Hunts to a van that would take them to their hotel.  (Id. ¶ 3.2.)  The van, driven by Pedro Guivari Castro, and carrying the Hunts along with Patrick and Elizabeth Caldwell, left the airport.  (Id. ¶ 3.3.)  Castro did not have a license to drive a motor vehicle.  (Id.)  Soon after leaving the airport, Castro lost control of the van, so that it left the roadway, overturned several times, and ejected Billy and Jean Hunt and Patrick Caldwell.  (Id. ¶ 3.4.)  Billy Hunt and Patrick Caldwell died at the scene, while Jean Hunt died several hours later at a Cancun hospital.  (Id.)

On September 25, 2009, Plaintiffs brought suit in the United States District Court for the District of New Jersey, alleging that Defendant's negligence led to the deaths of both Billy and Jean Hunt.  Shortly thereafter, Defendant submitted the present motion to dismiss for lack of personal jurisdiction, improper

venue, and forum non conveniens. [Docket Item 14.]  The parties
completed briefing on the pending motions and the Court then
permitted Plaintiffs to engage in jurisdictional discovery.
Plaintiffs submitted supplemental evidence, along with argument,
to which Defendants responded, and on July 30, 2010, the record
closed as to Defendant's instant motion to dismiss.

Defendant GIM is a Mexican corporation with its principal
place of business in Cancun, Mexico.  (Compl. ¶ 1.9.)  Plaintiffs
personally served GIM (through Armando Ortiz as its president)
with process in Arlington, Texas [Docket Item 36].

To support their claim that the Court has personal
jurisdiction over GIM, Plaintiffs offer competent evidence which,
if construed in the light most favorable to Plaintiffs and
resolving all factual disputes in their favor, shows the
following contacts with New Jersey: (1) Sometime in 2005, Ortiz
became a signatory, along with Albert Lacle, to a bank account
with Wachovia Bank numbered 6890 and located in Pomona, New
Jersey for a fictitious entity called "Beacon Hospitality
Services" (Bank Records, Pls. Exh. 4 at 0001-02; Ortiz 1st Aff. ¶
24 (Dec. 23, 2009)); (2) another Wachovia account exists for
Beacon Hospitality Services (Bank Records, Pls. Exh. 4 at 00003-
64) and Ortiz has two Wachovia bank accounts in his own name
whose records suggest the accounts are located in Pomona, New
Jersey (Bank Records, Pls. Exh. 4 at 412-21, 492; Ortiz Dep. at

31); (3) GIM uses the 6890 bank account for a substantial amount of business[2] (Bank Records, Pls. Exh. 4; Ortiz Dep. at 35, 41; Sloman Dep. at 35, 38-39; GIM Website, Pls. Exh. F-1), though it maintains its own bank account in Mexico (Ortiz Dep. at 14, 25; Ortiz 2nd Aff. ¶ 7); (4) GIM uses the 6890 account because some GIM customers prefer to use a United States bank, rather than a Mexican bank (Sloman Dep. at 20-21, 35); (5) the agreement between CheapCaribbean.com's parent company, COMM Group, and GIM to provide transportation services required that COMM Group pay GIM through a wire transfer to the 6890 account (Ground Tour Operation/Transportation Agreement, Pls. Exh. 1); (6) Mr. Lacle in New Jersey, Ortiz's sister in New Jersey, and Ortiz's brother-in-law in Florida, all provided mailing addresses for the

---

[2] Plaintiffs argue that GIM paid United States federal income tax on the 6890 based on Ortiz' deposition testimony. Ortiz testified that as a United States citizen, he is required to pay United States income tax on his worldwide income, including his income from GIM in Mexico. (Ortiz Dep. at 13-14.) While explaining that he is required to pay income tax on his GIM income he was asked:

Q. Okay. All right. Well, my question was specifically for Global Incentive Management, not you as an individual.
A. And that is for Global Incentive Management as well.
Q. Okay. So both you and Global Incentive Management paid federal -- United States federal income taxes in 2007, 8 and 9?
A. That is a must, yes.

In a second supplemental affidavit, Ortiz stated that he meant to refer to his own obligations as a United States citizen and confirmed that GIM, as a Mexican corporation, does not pay United States income taxes. (Ortiz 3rd Aff. ¶ 6.) For the purpose of this opinion, whether GIM did or did not pay taxes on the 6890 account does not alter the Court's analysis.

Wachovia bank accounts, including the 6890 account, and received those bank statements, forwarded mail, and on approximately six occasions Mr. Lacle deposited funds into one of these accounts (Ortiz 2nd Aff. ¶ 9; Ortiz Dep. at 23, 25-26, 28-29, 44); and (7) within the past five years, Ortiz has attended two trade shows as president of GIM (Ortiz 1st Aff. ¶¶ 6-8.)

## II. DISCUSSION

### A. Personal Jurisdiction

#### 1. <u>Standard of Review</u>

The plaintiff bears the burden of establishing personal jurisdiction.  <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324, 330 (3d Cir. 2009).  Once a defendant raises a jurisdiction defense "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'"  <u>Metcalfe</u>, 556 F.3d at 330 (quoting <u>Dayhoff Inc. v. H.J. Heinz Co.</u>, 86 F.3d 1287, 1302 (3d Cir. 1996)).  In the absence of an evidentiary hearing only a prima facie showing is required and plaintiffs are "'entitled to have their allegations taken as true and all factual disputes drawn in their favor.'"  <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 102 (3d Cir. 2009).

#### 2. <u>Personal Jurisdiction in New Jersey</u>

"'A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.'"  <u>D'Jamoos</u>, 566 F.3d

at 102 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)).  The New Jersey long-arm statute permits the exercise of personal jurisdiction over a nonresident defendant to the extent permitted by the United States Constitution.  N.J. Sup. Ct. R. 4:4-4(c)(1); Nicastro v. McIntyre Mach. Am., Ltd., 987 A.2d 575, 596 (N.J. 2010).  As a consequence, the Court must determine whether, consistent with the Fourteenth Amendment, Defendants have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two types of personal jurisdiction, general jurisdiction and specific jurisdiction.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). "If the defendant[s] maintain continuous and substantial forum affiliations, then general jurisdiction exists.  If the defendant[s'] contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 321 (3d Cir. 2007) (internal citations omitted).  In the present case, Plaintiffs claim that the Court has both general and specific jurisdiction over GIM, and so the Court will address each in turn.

### (a)  General Jurisdiction

Plaintiffs argue that the Court has general jurisdiction
over GIM on two separate grounds: (1) because of the presence of
a bank account in New Jersey through which "substantial" funds
pass, and (2) because of the presence of several "agents" of GIM
in New Jersey.  Defendant makes three responses: (1) disputing
the suggestion that the Wachovia bank accounts can be considered
New Jersey accounts, (2) arguing that even if the accounts are
based in New Jersey they are not sufficient to justify general
jurisdiction, and (3) pointing out that there is no evidence that
Ortiz's sister and friend are "agents" of GIM.  For the reasons
expressed below, the Court agrees with Defendants and concludes
that the Court does not have general jurisdiction over GIM.

General jurisdiction permits the forum state to exercise
jurisdiction over non-resident defendants even for claims arising
from non-forum related activities.  As a consequence, "the
plaintiff must show significantly more than mere minimum contacts
to establish general jurisdiction."  Provident Nat'l Bank, 819
F.2d at 437.  General jurisdiction is only permitted where the
defendant has "continuous and systematic" contacts with the forum
state.  Helicopteros, 466 U.S. at 415-16.  "Obviously this is a
much higher threshold to meet for the facts required to assert
this 'general' jurisdiction must be 'extensive and persuasive.'"
Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,

675 F.2d 587, 589 (3d Cir. 1982) (quoting <u>Compagnie des Bauxites</u> <u>de Guinea v. Insurance Co. of North America</u>, 651 F.2d 877, 890 (3d Cir. 1981)).

(i) <u>The "New Jersey" Bank Accounts</u>

The Court agrees with Defendant that the existence of the identified Wachovia bank accounts are insufficient to establish general jurisdiction. The Court will assume for the purposes of this motion that all four Wachovia accounts -- the two under Beacon Hospitality Services and the two in Ortiz's name -- can be considered located in New Jersey. The Court will further assume that at least the 6890 bank account can be attributed to GIM and not simply Ortiz. While the existence of bank accounts in a state is often one factor a court considers when determining whether general jurisdiction is appropriate, <u>see</u>, <u>e.g.</u>, <u>D'Jamoos</u>, 566 F.3d at 107,[3] the presence of bank accounts in New Jersey,

---

[3] In <u>D'Jamoos</u>, the Third Circuit, relying on Tenth Circuit precedent, considered the following factors (of which the presence of bank accounts was just one) in determining whether general jurisdiction over a corporation is justified:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

<u>D'Jamoos</u>, 566 F.3d at 107 (citing <u>Doering v. Copper Mountain,</u> <u>Inc.</u>, 259 F.3d 1202, 1210 (10th Cir. 2001) and <u>Kuenzle v. HTM</u> <u>Sport-Und Freizeitgerte AG</u>, 102 F.3d 453, 457 (10th Cir. 1996)).

without more, does not amount to the sort of continuous and systematic presence in the forum to justify general jurisdiction. See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1362 n.5 (11th Cir. 2006) ("While [defendant] is correct in noting that the bank accounts alone are insufficient to sustain a finding of personal jurisdiction, they are one indication of minimum contacts."); American Express Int'l, Inc. v. Mendez-Capellan, 889 F.2d 1175, 1179-1180 (1st Cir. 1989) (the presence of two bank accounts in the forum, along with training employees in the forum, insufficient for personal jurisdiction); see also Nat'l Sun Indus. v. Dakahlia Commercial Bank, No. 95-761, 1997 U.S. App. LEXIS 9662, at *2-5 (2d Cir. May 2, 1997) ("The maintenance of an active correspondent bank account in New York does not, without more, demonstrate a foreign corporation's 'presence' in New York.").

A defendant who resides outside the forum, who does not solicit significant business from the forum, and who does not conduct business within the forum, cannot be sued in a state simply because the defendant opened several bank accounts in the state (and receives a not-insignificant amount of funds into these accounts). Generally, holding funds in a bank account in a particular state -- to the extent a bank account with a national

bank can be considered tied to the state where it was opened[4] --
does not suffice, because the location where a business or
businessman holds some portion of his money is a relatively
minimal, passive, and fortuitous (particularly when using a
national bank) relationship to the forum, with a tenuous
connection to the business itself.  A business that merely opens
a bank account in a particular state would not have a reasonable
expectation of being haled into court in that forum for claims
not arising out of that bank account.

The Court is supported by the Supreme Court's decision in
Helicopteros, where "the defendant had solicited helicopter
services in Texas, negotiated its contract for services there,
had purchased about 80% of its helicopters, spare parts, and
accessories for more than $4 million from a Texas company over an
eight year period, and regularly sent employees to Texas for
training and to bring back helicopters[.]" Provident Nat'l Bank,
819 F.2d at 438 (citing Helicopteros, 466 U.S. 408).  This degree
of active, regular, availment of the forum state was found to be
insufficient for general jurisdiction.  Helicopteros, 466 U.S. at
418.  Nevertheless, it represents a far more substantial
connection to the forum than Defendant's opening several bank
accounts in New Jersey through a national bank, and then

_____

[4] As Defendants note, the Wachovia bank statements direct
the account holder to contact a national office in North Carolina
in case of questions.

maintaining those accounts for some percentage of income.  See

also, Gehling v. St. George's School of Medicine, Ltd., 773 F.2d

539 (3d Cir. 1985) (school that took six percent of its students

from Pennsylvania not subject to general jurisdiction in

Pennsylvania).

Plaintiffs rely heavily on Provident Nat'l Bank, where the

Third Circuit found that Pennsylvania had general jurisdiction

over a financial institution, California Federal Savings & Loan

Association, with a "controlled disbursement account" in

Pittsburgh.  819 F.2d at 436.  The appeals court concluded that

California Federal invoked the general jurisdiction of

Pennsylvania because of its "zero balance" arrangement with the

Pittsburgh bank.  Under this arrangement, the Pittsburgh bank

notified California Federal every day of the number of checks

cleared, and California Federal would transfer that amount into

the account the same day.  In light of this daily activity in the

Pittsburgh account, the Third Circuit concluded that "the

borrowing and lending of money, [was] the bread and butter of its

daily business."  Id. at 438.

Provident Nat'l Bank, however, is distinguished from the

present case as to two key points.  First, and perhaps most

importantly, the New Jersey bank accounts do not represent the

"bread and butter" of the business of GIM.  Its business is to

provide tourist services, such as transportation, to other

tourist businesses.  While it is certainly not a not-for-profit

organization and the presence of a bank account in the United

States facilitates its business, the saving, receiving, and

spending of money is not the "bread and butter" of its business

any more than any business must save, receive, and spend money.

Second, there is no evidence of the sort of active, daily

relationship between the New Jersey bank accounts and GIM that

existed between California Federal and its Pittsburgh account.

For these reasons, <u>Provident Nat'l Bank</u> only supports the

conclusion that the presence of a bank account, absent special

circumstances, does not warrant general jurisdiction.[5]

(ii) <u>"Agents" in New Jersey</u>

Plaintiffs do not, however, rely solely on the allegedly New

Jersey-based bank accounts as a basis for asserting general

jurisdiction.  In addition, they argue that Mr. Lacle and Ortiz's

sister should be considered "agents" of GIM because they received

bank statements, forwarded mail, and made at least one deposit

into an account.  These facts, however, are not sufficient to

show that either Lacle or the sister can be considered "agents"

for purposes of conferring general jurisdiction.

---

[5] Though not bound by <u>United Rope Distributors, Inc. v.</u>
<u>Line</u>, 785 F. Supp. 446, 450 (S.D.N.Y. 1992), on which Plaintiffs
also rely, the Court observes that Plaintiffs have not submitted
evidence showing that the Wachovia accounts held "substantially
all of the income" of GIM or that the accounts provided "payment
of substantially all of its business expenses."

13

"An agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" <u>New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.</u>, 2010 N.J. LEXIS 712, at *21 (N.J. Aug. 2, 2010) (quoting Restatement (Third) of Agency § 1.01 (2006)); <u>AT&T v. Winback & Conserve Program</u>, 42 F.3d 1421, 1434 (3d Cir. 1994) ("'An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent.'") (quoting <u>Sears Mortgage Corp. v. Rose</u>, 634 A.2d 74, 79 (N.J. 1993)).  An agent is "cloaked" with authority to bind the principal with third parties.  <u>Cohen v. Southbridge Park, Inc.</u>, 848 A.2d 781, 789-91 (N.J. Super. Ct. App. Div. 2004).

In the present case, Plaintiffs have not offered any evidence to suggest that Mr. Lacle or Ortiz's sister were controlled by GIM or that they had assented to such control.  Nor is there competent evidence that either person had the authority to bind GIM with third parties.  That both Mr. Lacle and the sister had agreed to receive bank statements, forward bank account mail, and in at least one case deposit money into an account, is not evidence that they should be considered agents of GIM for the purpose of personal jurisdiction.  Mr. Lacle's and

the sister's ties to New Jersey cannot, therefore, be attributed to GIM.

Taken together, Defendant's New Jersey bank accounts and Mr. Lacle's and the sister's arrangement to forward mail do not provide sufficient continuous and systematic contacts by GIM to establish general jurisdiction in New Jersey.

### (b)  Specific Jurisdiction

Plaintiffs argue that absent general jurisdiction, the Court has specific jurisdiction over Defendants because the cause of action arises out of or relates to Defendants' 6890 bank account in New Jersey.  Plaintiffs maintain that the car accident in Mexico relates to the 6890 bank account because CheapCaribbean.com paid GIM through that bank account.  Defendant responds that (1) it did not purposefully direct its activities at the forum, and (2) that Plaintiffs' claims do not relate to the 6890 bank account.  For the purposes of the present motion the Court will assume that Defendant purposefully directed its activities at New Jersey by using a New Jersey bank account, but the Court nevertheless concludes that Plaintiffs' claims do not arise out of those activities.

In O'Connor, the Third Circuit outlined the standard this Court must apply when considering whether the litigation "arise[s] out of or relate[s] to" a defendant's contacts with the forum.  496 F.3d at 318-23.  The appeals court stated:

15

> We thus hold that specific jurisdiction requires a
> closer and more direct causal connection than that
> provided by the but-for test. . . . [T]here is no
> "specific rule" susceptible to mechanical
> application in every case. But in the course of
> this necessarily fact-sensitive inquiry, the
> analysis should hew closely to the reciprocity
> principle upon which specific jurisdiction rests.
> With each purposeful contact by an out-of-state
> resident, the forum state's laws will extend
> certain benefits and impose certain obligations.
> Specific jurisdiction is the cost of enjoying the
> benefits. . . . The relatedness requirement's
> function is to maintain balance in this reciprocal
> exchange. In order to do so, it must keep the
> jurisdictional exposure that results from a contact
> closely tailored to that contact's accompanying
> substantive obligations. The causal connection can
> be somewhat looser than the tort concept of
> proximate causation, but it must nonetheless be
> intimate enough to keep the quid pro quo
> proportional and personal jurisdiction reasonably
> foreseeable.

Id. at 323.

In the present case, the connection between the tragic
accident in Mexico and the 6890 bank account, taking Plaintiffs'
evidence to be true and construing all facts in their favor, is
not "intimate enough to keep the quid pro quo proportional and
personal jurisdiction reasonably foreseeable." See id. Neither
Billy nor Jean Hunt, nor the unlicensed van driver, had any
connection with the 6890 Wachovia bank account in New Jersey.
The Hunts purchased their vacation package through
CheapCaribbean.com, presumably without any knowledge of GIM or
its New Jersey bank account. Although CheapCaribbean.com
ultimately paid GIM for its transportation services through the

16

6890 account, that payment is many steps removed from the negligence in Mexico that forms the basis of this litigation against GIM.

In fact, these facts may not even satisfy the broad "but-for" test because there is no evidence that but for the payment of funds to the 6890 bank account Plaintiffs would not have boarded the van and the accident would not have ensued. The Court has no reason to assume that payment for those particular services was made before the accident or that had CheapCaribbean.com failed to make payment to 6890 account Defendants would have withheld their services.[6] It was not reasonably foreseeable that GIM could be sued in New Jersey for negligence that occurred in Mexico causing harm to residents of Texas simply because the payment by CheapCaribbean.com for transportation services was wired into a New Jersey bank account.

The Court is guided by O'Connor, where the defendant, a hotel providing spa services, mailed brochures to plaintiffs in Pennsylvania advertising their services and made a contract with plaintiffs for such services through phone calls to Pennsylvania. 496 F.3d at 316. The appeals court concluded that Pennsylvania

_____

[6] The Court observes that pursuant to the contract between CheapCaribbean.com and GIM, GIM was to provide "monthly" invoices which CheapCaribbean.com was required to pay within 14 days of receipt. (Ground Tour Operation/Transportation Agreement, Pls. Exh. 1 at 8.) Prepayment to GIM was not a contractual requirement.

had specific jurisdiction over claims brought after Plaintiff was injured while receiving a massage at the spa. Id. at 323-24. The contract, made through calls to and from Philadelphia, included an obligation to exercise due care in the provision of those services, and so the Third Circuit concluded that the cause of action arose out of those contacts with Pennsylvania. Id. By contrast, the Hunts are not alleged to have had any contact with GIM, let alone any inducement to make use of GIM's services by way of New Jersey. GIM's obligations to the Hunts are virtually unconnected to the 6890 bank account in New Jersey. Consistent with O'Connor, Plaintiffs' claims do not arise out of or relate to Defendant's minimal contacts with New Jersey. The Court lacks specific jurisdiction over GIM.

In sum, though the Court acknowledges that terrible circumstances led to the present litigation, the Court finds that Plaintiffs have failed to present a prima facie showing of either general or specific jurisdiction in New Jersey over Defendant GIM.

### 3. Dismiss or Transfer

Having found that this Court lacks personal jurisdiction over GIM, the Court must determine the appropriate remedy. Defendant has moved to dismiss upon such a finding. Plaintiffs request, in lieu of dismissal, that the Court transfer this action to the District Court for the Northern District of Texas.

Defendant responds that, should the case be transferred, it will simply renew their requests for dismissal for lack of personal jurisdiction and for forum non conveniens.

**(a) Standard of Review**

As an alternative to dismissal, where a court finds that it lacks personal jurisdiction it may transfer the action (or some portion of the action) "to any other court in which the action could have been brought," so long as such a transfer "is in the interest of justice." 28 U.S.C. § 1631; D'Jamoos, 566 F.3d at 106-07; see 28 U.S.C. § 1404(a). An action can be brought only where the court has personal jurisdiction over defendants, and thus a court does not have authority to transfer a case to a court that lacks personal jurisdiction. Sunbelt Corp. v. Noble Denton & Assocs., Inc., 5 F.3d 28, 31-33 (3d Cir. 1993) (finding district court lacked authority to transfer case under § 1404(a) because transferee court did not have personal jurisdiction over defendants).

The plaintiff seeking transfer to a different district need only establish a prima facie basis for personal jurisdiction in that district. D'Jamoos, 566 F.3d at 107. The Texas long-arm statute, like New Jersey, permits the exercise of personal jurisdiction over a nonresident defendant to the extent permitted by the United States Constitution. Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.

1991); TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.  Therefore, the

Court's analysis will center on whether the Northern District of

Texas could exercise personal jurisdiction over the non-resident

corporate defendant consistent with the demands of the due

process clause of the United States Constitution.  Here, the

Plaintiffs assert an alter ego theory as the basis for finding

personal jurisdiction over Defendant GIM in Texas.[7]

### (b)  Alter Ego Personal Jurisdiction

Plaintiffs argue that personal jurisdiction exists over

Defendant GIM in Texas under an "alter ego" theory.  According to

this argument, GIM is not a separate legal entity from Ortiz

himself, and therefore the Court should pierce the corporate veil

and impute Ortiz's personal contacts with Texas to Defendant GIM

for the purpose of finding general personal jurisdiction.

Defendants respond by contesting the legal basis for

Plaintiffs' argument.  Pointing out that all authority cited by

---

[7] The Court notes that Plaintiffs personally served Ortiz in
both his individual capacity and as a corporate officer of GIM in
Arlington, Texas.  While this method of service would have been
sufficient to extend personal jurisdiction in Texas over Ortiz
himself (Burnham v. Superior Court of Cal., 495 U.S. 604 (1990)),
it would most likely not be sufficient to extend personal
jurisdiction over Defendant GIM.  See Siemer v. Learjet
Acquisition Corp., 966 F.2d 179, 182-84 (5th Cir. 1992)
(rejecting contention that personal service in the forum on an
officer or agent of a corporation, without more, is sufficient to
satisfy due process).  Because the Plaintiffs assert a different
theory of personal jurisdiction over GIM in Texas, however, the
Court does not have to consider whether personal service upon
GIM's principal officer alone would have been sufficient.

Plaintiffs only supports the application of the alter ego
doctrine to corporate parent/subsidiary relationships, Defendants
argue that because Ortiz is only an individual shareholder rather
than a corporate parent, the legal theory of alter ego
jurisdiction should not apply.  The Court concludes that, while
no case can be found that considers the application of alter ego
theory in precisely this form, the logic of the alter ego theory
applies here, such that a finding of personal jurisdiction over
GIM in the Northern District of Texas is probable.

(i)  <u>Alter Ego Jurisdiction and Individuals</u>

Under Texas law, as elsewhere, a corporation is generally
treated as a separate legal entity, for both jurisdictional and
liability purposes, from its corporate or individual owners.
<u>United States v. Jon-T Chemicals, Inc.</u>, 786 F.2d 686, 691 (5th
Cir. 1985).  Under certain circumstances, however, courts have
permitted a plaintiff to "pierce the corporate veil" to assign
jurisdictional contacts or liability to one entity based on the
actions or contacts of the other.  <u>Id.</u>  Here, Plaintiffs argue
that because of the control and treatment of GIM by Ortiz, the
Court should attribute Ortiz's Texas contacts to GIM.  Defendants
claim that alter ego doctrine only allows contacts to be imputed
between a corporate parent and subsidiary, but not between an
individual shareholder and a corporation.  While it is true that
Plaintiffs cite only to corporate parent/subsidiary cases, it is

not true that the alter ego doctrine of personal jurisdiction has
not been applied to an individual shareholder under Texas law.
See, e.g., Carone v. Retamco Operating, Inc., 138 S.W.3d 1, 10-11
(Tex. App.-San Antonio 2004) (accepting allegations of alter ego
jurisdiction against non-resident individual shareholder as
satisfying plaintiff's initial prima facie burden).  However,
while there are many cases under Texas law that consider imputing
an alter-ego corporation's minimum contacts to an individual
shareholder (such as Carone), the Court can find no cases in
Texas or elsewhere holding the reverse, as Plaintiffs apply the
doctrine here.  Thus, the issue is not whether an alter ego
theory can be applied in the context of an individual shareholder
defendant, but whether a court can pierce the corporate veil in
such a way as to impute an individual's minimum contacts to a
corporation.

This Court can find no logical reason to restrict alter ego
jurisdiction in this circumstance.  If the general purpose of the
alter ego doctrine is to enable litigants to disregard the
corporate fiction that the corporation is a separate legal entity
for jurisdiction and liability purposes in certain circumstances,
there would seem to be no coherent reason to only allow such
piercing to reach the shareholder but not the corporation.  As
Plaintiffs point out, in the analogous context of corporate
parent/subsidiary alter ego, courts in Texas have considered

imputing the minimum contacts of a corporate parent to a non-resident corporate subsidiary (<u>Walker v. Newgent</u>, 583 F.2d 163, 167 (5th Cir. 1978)), as well as the minimum contacts of a corporate subsidiary to a non-resident corporate parent (Hargrave <u>v. Fibreboard Corp.</u>, 710 F.2d 1154, 1159-60 (5th Cir. 1983)). Indeed, the Texas state courts and the Fifth Circuit have suggested that the legal principal is the same whether the non-resident party is the owner or the subsidiary. Conner v. ContiCarriers and Terminals, Inc., 944 S.W.2d 405, 418 (Tex. App.-Houston 1997) ("These principles apply not only in the situation where jurisdiction is sought over the parent corporation through its subsidiary's local activities, but also when jurisdiction is sought over the subsidiary through its parent corporation.") (citing <u>Walker</u>, 583 F.2d at 1978).

Finally, the Fifth Circuit has also indicated that the theory of applying alter ego jurisdiction to absent corporations or individuals is the same: "The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the <u>International Shoe</u> due process analysis." Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653 (5th Cir. 2002). Applying this reasoning to the case before it, this Court concludes that if Plaintiffs can make a prima facie showing

of alter ego between Ortiz and GIM (that the two are in essence the same entity), the Court will impute Ortiz's Texas contacts to GIM, just as it would in the reverse situation, for the following reasons.

(ii) <u>Prima Facie Showing of Alter Ego</u>

Plaintiffs have alleged minimal but sufficient facts to make a prima facie showing that GIM is the alter ego of Ortiz. Under Texas law, the factors a court considers in an individual shareholder alter ego context are: (1) payment of alleged corporate debts with personal checks or other commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of corporate profits to the individual for his or her personal use, (4) inadequate capitalization, (5) other failure to keep corporate and personal assets separate, but that an individual's standing as an officer, director, majority shareholder alone is insufficient. <u>Hoffmann v. Dandurand</u>, 180 S.W.3d 340, 347 (Tex. App.-Dallas 2005). No single factor or combination of factors are dispositive; the plaintiff should point to "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for

personal purposes." <u>Carone</u>, 138 S.W.3d at 12-13 (quoting <u>Castleberry v. Branscum</u>, 721 S.W.2d 270, 272 (Tex. 1986)).

In the instant case, the Plaintiffs have alleged and pointed to evidence in the record supporting allegations that (1) Ortiz is the President of GIM, (Pls. Supplemental Submission Regarding Texas Personal Jurisdiction at 5); (2) Ortiz is the majority shareholder of GIM and, together with his wife, controls 100% of the corporation's shares (<u>id.</u>); (3) Ortiz has commingled corporate and personal funds in a personal bank account (<u>id.</u> at 8); and (4) Ortiz is signatory to a bank account for a fictitious entity, "Beacon Hospitality Services," which GIM uses for a substantial amount of business (Bank Records, Pls. Exh. 4; Ortiz Dep. at 35, 41; Sloman Dep. at 35, 38-39; GIM Website, Pls. Exh. F-1). While these facts are spare, they are minimally sufficient to meet Plaintiffs' burden at this stage. By contrast, for example, in <u>Hoffmann v. Dandurand</u>, the Texas appellate court concluded that the plaintiff failed to meet this burden by merely pointing to evidence of stock ownership and corporate office, and did not point to any evidence of "failure to observe corporate formalities or a commingling of corporate and personal property". <u>Hoffmann</u>, 180 S.W.3d at 351. Plaintiffs in the instant case have gone this additional step and pointed to evidence of commingling of assets sufficient to meet this burden.

Defendants argue that Plaintiffs do not allege sufficient

facts to meet the alter ego standard because they point to no facts identifying fraud or injustice, such as undercapitalization. (Defs. Resp. to Texas Jurisdiction at 9). The Texas alter ego cases demonstrate that a plaintiff need only point to "unfair device" such as fraud or undercapitalization in cases where corporate formalities have been observed and individual property is kept separately. Castleberry, 721 S.W.2d at 272; Hoffmann, 180 S.W.3d at 347. Thus, when plaintiff has, as here, pointed to evidence of commingling of funds, "unfair device" or fraud is not a necessary element. See Stuart v. Spademan, 772 F.2d 1185, 1192 n.12 ("Accordingly, for jurisdiction to exist, there need not be both the existence of a mere shell corporation and fraud. Rather, either factor, a shell corporation or fraud is sufficient by itself to justify jurisdiction") (internal quotation marks omitted). Furthermore, GIM, though Ortiz, uses the fictitious account in the name of "Beacon Hospitality Services," for which account Ortiz is a signatory, to conduct a substantial amount of GIM business; whether classified as commingling or deception, such a practice is further evidence of GIM operating as the alter ego of Ortiz.

Consequently, the Court will impute Ortiz's Texas contacts to GIM for the purpose of determining whether the District Court for the Northern District of Texas would have general jurisdiction over GIM.

26

### (c)  Imputing Ortiz's Texas Contacts

Plaintiffs ask the Court to impute the following personal contacts to GIM: (1) Ortiz acquired a Texas drivers license in July of 2009 (Pls. Supplemental Submission Regarding Texas Jurisdiction at 5); (2) Since May 2009, Ortiz has used a Texas address for a personal bank account (id.); (3) Ortiz and his wife signed a deed of trust for a Texas residence on May 7, 2010, in which they both agree that the residence will be their principal residence for at least one year (id. at 5-6); (4) Ortiz's personal bank account was used at least 47 times in Texas in the spring and summer of 2009 (id. at 7); and (5) Ortiz gave deposition testimony in Texas rather than Mexico on three occasions (id. at 8).

Defendants argue that the Court should disregard all contacts with Texas which were established after October of 2007, the date of the underlying accident in this case, citing United States v. Wallace, 961 F. Supp. 969 (N.D. Tex. 1996).  This case does not support this proposition.  The case holds that for liability to attach to parent company based on the acts of a subsidiary, only evidence of alter-ego control at the time of the alleged wrongful conduct is relevant.  961 F. Supp. at 979. Here, the Court is not attempting to determine what wrongful acts, if any, should be imputed to GIM for liability purposes, but rather what contacts with the forum state should be

considered.  On this question, the Fifth Circuit has clearly
stated that "General Jurisdiction can be assessed by evaluating
contacts of the defendant with the forum over a reasonable number
of years, up to the date the suit was filed."  Access Telecom,
Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir.
1999).  See also Asahi Metal Indus. Co. v. Superior Ct., 480 U.S.
102, 106 (1987) (considering total sales of product in forum
state, including four years after the sale giving rise to
plaintiff's injury).  Thus, for the purposes of the instant
inquiry, the Court will consider all of Ortiz's contacts with
Texas which were established prior to September 25, 2009, when
this case was initially filed.

Because the Court will only consider contacts established
with Texas prior to September 25, 2009, Ortiz's residential
purchase in the spring of 2010 will be disregarded.
Additionally, the fact that Ortiz gave depositions in Texas
rather than Mexico is irrelevant given that this Court
specifically requested that he attempt to do so.  (Order
Permitting Jurisdictional Discovery ¶ 9 (Jun. 11, 2010)) [Docket
Item 31.]

However, the Court does consider Ortiz's Texas drivers
license, commercial transactions in Texas, and use of the Texas
address on his personal bank accounts as relevant and sufficient
to establish a prima facie showing that his contacts were

"continuous and systematic" with the forum state, as required for a court to exercise general jurisdiction over a foreign defendant. <u>Helicopteros</u>, 404 U.S. at 415. These contacts, demonstrating a purposeful availment of the laws of Texas and a regular course of visiting and doing business in the state, meet the due process requirements under <u>Helicopteros</u> and, consequently, also comport with the requirements of the Texas long-arm statute. Thus, because the Court concludes that Ortiz himself could be subject to general jurisdiction in Texas, when the Court imputes these continuous and systematic contacts to Defendant GIM, we conclude that Plaintiffs have presented a prima facie showing that the District Court for the Northern District of Texas has general jurisdiction over Defendant GIM. Because the Plaintiffs could have originally brought this case in that district, the Court will transfer the case under 28 U.S.C. § 1631.

### III. Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over Defendant GIM. The Court further concludes that in lieu of dismissing the action, the Court will transfer the case to the District Court for the Northern District of Texas under 28 U.S.C. § 1631 because the Plaintiffs have made a prima facie showing that the case could have originally been

brought in that district.  The accompanying Order will be
entered.


**September 20, 2010**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge